**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| BILL TAYLOR, <br><br>        Plaintiff, <br><br>    v. <br><br>COX COMMUNICATIONS CALIFORNIA, LLC, et al., <br><br>        Defendants. | Case No.: CV 16-01915-CJC(JPRx) <br><br><br> **ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

## I. INTRODUCTION AND BACKGROUND

This wage-and-hour class action was filed by Plaintiff Bill Taylor against Defendants Cox Communications California, LLC and Cox Communications, Inc. (together, "Defendants") in state court in 2012. Plaintiff alleges causes of action for

violations of a number of sections of the California Labor Code, as well as unfair business practices under Cal. Bus. & Prof. Code § 17200.  (Dkt. 1 ["Notice of Removal"] Exh. C ["FAC"].)  Essentially, Plaintiff argues that Cox systematically underpaid its field technicians—employees who travel to customers' residences to install and repair TV and internet services.  (*See id.* ¶ 10.)

On November 28, 2012, Defendants removed to this Court.  (Case No. CV 12-10149-CJC(JPRx) (Nov. 28, 2012) at Dkt. 1.)  Although the operative complaint, the First Amended Complaint, affirmatively alleged that the "total amount in controversy for the entire case does not exceed $5,000,000," (FAC ¶ 1), Defendants' Notice of Removal argued that the class's aggregated claims actually summed to more than $24,000,000, and that this Court therefore had original jurisdiction pursuant to the Class Action Fairness Act ("CAFA").  *See* 28 U.S.C. § 1332(d)(2) (granting to the district courts "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action").

Plaintiff moved to remand, arguing that in light of the First Amended Complaint's express pleading that the CAFA amount-in-controversy requirement was not met, Defendants were required to prove "to a legal certainty"—then the pertinent legal standard under *Lowdermilk v. U.S. Bank National Association*, 479 F.3d 994 (9th Cir. 2007)—that there was actually more than $5,000,000 in controversy.  (*See* Case No. CV 12-10149-CJC(JPRx) (Dec. 17, 2012) at Dkt. 9.)  After receiving briefing on the issue, this Court granted Plaintiff's motion to remand.  It noted that "[t]he 'legal certainty' standard is a high bar for the party seeking removal," *Lowdermilk*, 479 F.3d at 1000, and that the evidence Defendants had provided in support of removal was "limited."  (Case No. CV 12-10149-CJC(JPRx) (Jan. 29, 2013) at Dkt. 18 ["Remand Order"] at 7.) Defendants had estimated the amount-in-controversy by assuming that the class size was roughly 600, that all 600 members worked for Defendants for the entirety of the class

period, that class members made an hourly rate of $25.00, and that they worked four shifts per week. (*Id.* at 7–8.) The trouble with these assumptions is that some were unsupported by declarations from Defendants—like the assertion that employees worked on average four shifts a week—and others were in fact *contradicted* by evidence offered by Defendants—such as the assertion that all class members were employed for the entire class period. (*Id.*) Defendants took "similar liberties," the Court found, with claims for waiting time penalties, providing "no evidence" for crucial factual assertions. (*Id.* at 8–9.) Concluding that it could not base its jurisdiction on "speculation and conjecture," *Lowdermilk*, 479 F.3d at 1002, the Court granted Plaintiff's motion to remand. (*Id.*)

Litigation proceeded in state court, and the state court recently certified a class of field technicians who participated in a program called "Home Start," in which they were permitted to take their field vehicles home with them at night rather than return them to Defendants' garage. (Dkt. 10-6 at 1.) Employees who participate in Home Start clock in from home every morning when they leave for their first assignment, but are not paid for their commute home from their final assignment. (*Id.*) Plaintiff argues that this arrangement violates California labor laws.

Following class certification, Defendants again removed. (Notice of Removal.) Defendants indicate that following class certification, they consulted their records to determine whether the potential claims for field technicians who participated in the Home Start program totaled more than $5,000,000.00, finding that they did. They now argue that because the FAC does not state grounds for removal, and because they were never served with any other paper that indicates grounds for removal, they were entitled to remove at any time provided that they presented adequate evidence. Believing that they now have such evidence, they wish to litigate in federal court. Plaintiff moved to

remand, and his motion is now before the Court. (Dkt. 10.) For the following reasons, it is DENIED.[1]

## II. DISCUSSION

### A. Legal Standard

A civil action brought in a state court but over which a federal court may exercise original jurisdiction may be removed by the defendant to a federal district court. 28 U.S.C. § 1441(a). CAFA provides federal jurisdiction over class actions in which the amount in controversy exceeds $5 million, there is minimal diversity between the parties, and the number of proposed class members is at least 100. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B). The removal statute is "strictly construe[d] . . . against removal jurisdiction. Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal citations omitted). A district court must remand the case to state court if it appears at any time before final judgment that the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

The formal mechanics of removal are governed by 28 U.S.C. § 1446. Section 1446(b) "identifies two thirty-day periods for removing a case." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010). "The first thirty-day removal period is triggered if the case stated by the initial pleading is removable on its face." *Id.* "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading,

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 23, 2016 at 1:30 p.m. is hereby vacated and off calendar.

motion, order, or other paper' from which removability may first be ascertained.'" *Id.* (quoting § 1446(b).) Crucially, "the two periods specified in § 1446(b)(1) and (b)(3) operate as limitations on the right to removal rather than as authorizations to remove." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013). In other words, a defendant may remove a case at *any* time, "provided that it has not run afoul of either of the thirty-day deadlines." *Id.* at 1125. Such a rule prevents plaintiffs from avoiding removal either by being ignorant of facts regarding removability or by concealing those facts. *Id.*

A defendant's subjective knowledge of facts establishing removability does not start either thirty-day clock. Instead, "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Although defendants are obligated to "apply a reasonable amount of intelligence in ascertaining removability," they are not required to "make extrapolations," "engage in guesswork," or "supply information" that a plaintiff has omitted. *Kuxhausen v. BMW Fin. Servs.*, 707 F.3d 1136, 1140–41 (9th Cir. 2013). What matters is what is contained in the pleadings or other papers; the Ninth Circuit does not "charge defendants with notice of removability until they've received a paper that gives them enough information to remove." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

### B. Application

Plaintiff does not dispute that the Court would ordinarily have jurisdiction over this action, or in other words, that the three prerequisites for CAFA jurisdiction—an amount-in-controversy over $5,000,000, a class of at least 100, and minimal diversity—are met. Instead, he argues that the Court should remand because Defendants' removal petition is

untimely. The first thirty-day clock was obviously never triggered; otherwise, this Court would not have remanded this action in 2013. But Plaintiff says that the second thirty-day period was triggered when his deposition was taken on January 10, 2014. In that deposition, Plaintiff provided testimony about his average commute that permitted Defendants to estimate the value of his individual claims. Defendants then made certain assumptions about other class members—whether their commutes were longer or shorter than Plaintiff's, for example, based on territory size—and then combined those assumptions with information on the frequency of technicians' shifts (four per week), along with the percentage of technicians participating in the Home Start program (70%) to estimate the total sum of the class's claims. Defendants now calculate that figure to be approximately $7 million. (Dkt. 12-1 ¶¶ 6–8; Dkt. 12-2 ¶¶ 3–13.)

Plaintiff does not challenge any of these calculations. Instead, he argues that Defendants were required to remove within thirty days of the receipt of Plaintiff's deposition testimony in 2014—the "final piece of the puzzle," in his words, (Motion at 14). Defendants should have realized then, Plaintiff says, that the amount-in-controversy exceeded $5,000,000. The trouble with this argument is that is foreclosed by the Ninth Circuit's decision in *Kuxhausen*. There, the plaintiff executed a lease agreement with BMW Financial Services for a luxury SUV. *Kuxhausen*, 707 F.3d at 1138. The agreement contained an arbitration clause that the plaintiff believed to be unconscionable, so she brought suit, originally pleading a class of at least 200 members who had leased vehicles from a particular BMW dealership. The plaintiff's vehicle itself cost more than $50,000, and she sought rescission of her lease, as well as statutory damages. (*Id.* at 1138; 1140.)

BMW Financial did not remove. Plaintiff subsequently filed an amended complaint which expanded the class to all California consumers who had executed a lease agreement with BMW Financial, regardless of the dealership. (*Id.* at 1138.) Upon

receiving this amended complaint, BMW searched its records and determined that the new class was so numerous that CAFA's amount-in-controversy requirement was met, even assuming relatively low-level statutory damages. *Id.* at 1139. It therefore removed. The plaintiff moved to remand, and the district court granted her motion. The district court explained that the initial complaint alleged a class of 200 and that plaintiff herself was seeking rescission of a vehicle contract worth more than $50,000. (*Kuxhausen*, 707 F.3d at 1140.) Every class member had bought an expensive vehicle, so simple math meant that the CAFA's amount-in-controversy requirement was easily met, the district court reasoned, and the initial complaint therefore triggered the thirty-day period for BMW Financial to remove. (*Id.*)

The Ninth Circuit reversed. It agreed with the district court that the defendant could be expected to "[m]ultiply[] figures clearly stated in a complaint" in order to determine the amount in controversy. *Kuxhausen*, 707 F.3d at 1140. But it pointed out that the original complaint gave no indication that whether the value of the plaintiff's vehicle contract was representative of the value of other class members' vehicle contracts. *Id.* The plaintiff argued that BMW Financial should have "consulted its business records to identify a representative valuation," but the Ninth Circuit explained that this sort of requirement is at odds with the "clear rule" that materials outside the complaint do not start the thirty-day clock. *Id.* The Ninth Circuit went on to even reject the district court's common-sense reasoning that if the average value of a class member's agreement were only $25,000—surely a conservative figure, given that luxury vehicles were at issue—the amount in controversy would be met. "The fact remains," that court explained, "that we don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove." *Id.* Because "nothing in [the plaintiff's] complaint 'indicate[d] that the amount demanded *by each putative class member* exceed[ed] $25,000,'" the removal clock was never triggered, and BMW Financial was permitted to remove. *Id.* (quoting *Carvalho v. Equifax Info. Servs., LLC*,

629 F.3d 876, 1141 (9th Cir. 2010) (emphasis in original)).

*Kuxhausen* is directly on point. Although Defendants received information in 2014 that indicated how long *Plaintiff's* commute was, they were never served with a paper establishing whether this commute was typical of the class. Nor could they have been expected to determine that information themselves; such a requirement would violate the rule that a defendant's subjective knowledge does not trigger a removal clock. The second thirty-day clock was therefore never triggered, and Defendants' present removal petition is timely.[2]

Plaintiff argues that this result is unacceptable because Defendants were effectively permitted to test how litigation progressed in state court and then attempt removal if a number of important issues did not go their way. This, Plaintiff says, constitutes "improper forum shopping" designed to give Defendant "a second bite at the apple on unsuccessful motions," like class certification. (Motion at 20.) But the Ninth Circuit rejected an analogous argument in *Roth*:

> It may be that in some diversity cases, defendants will be able to take advantage of the fact that neither the "initial pleading" not any later document received from plaintiff triggers one of the two thirty-day periods. In such cases, defendants may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so. []
>
> It is thus at least theoretically possible . . . for a defendant to wait until the state court has shown itself ill-disposed to [the] defendant, or until the eve of trial in state court, before filing a notice of removal . . . . [T]he theoretical possibility of abusive gamesmanship remains.

---

[2] As noted above, Plaintiff makes no effort to dispute the substance of Defendants' removal petition. The Court has reviewed the evidence presented by Defendants and, were the issue disputed, would hold that Defendants have shown by a preponderance of the evidence that the amount-in-controversy here exceeds $5,000,000.

> Our best answer—and a likely sufficient answer—is that plaintiffs are in a position to protect themselves. If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained. 28 U.S.C. § 1446(b)(3). Such a document will trigger the thirty-day removal period, during which defendant must either file a notice of removal or lose the right to remove.

*Roth*, 720 F.3d at 1126. Plaintiff made a strategic decision to plead that the amount-in-controversy was below $5,000,000 and then to not furnish Defendants with any document indicating otherwise. The risk inherent in such a course was that Defendants would see how the state court case played out before removing. Such a situation is somewhat distasteful, as the Ninth Circuit observed in *Roth*, but it was Plaintiff—not Defendants—who was in the position to prevent it.

One final issue remains, unsatisfactorily briefed by either party: whether this removal petition is barred by the "common law prohibition against successive removals." *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991). Under that rule, a successive removal petition may only be entertained when there has been a "change of circumstances" such that the second petition is made on a "*new* and *different* ground" from the first. *Id.* (emphasis in original). This removal petition is not barred by that rule. First, Ninth Circuit panels have split, perhaps inadvertently, on whether CAFA cases are even subject to the ordinary rule that successive removal petitions must be made on different grounds. *Compare Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (holding that they are not, since "CAFA explicitly allows review of remand orders") *with Reyes v. Dollar Tree Stores*, 781 F.3d 1185, 1188 (9th Cir. 2015) (applying the traditional rule to a CAFA case but finding the requisite "change in circumstances"). However, even if the traditional rule were applied here, the Ninth Circuit has squarely held that the Supreme Court's decision in *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013) qualifies as a "change in circumstances" when an initial removal petition

was analyzed under *Lowdermilk*, the Ninth Circuit case that was abrogated by *Standard Fire*.[3]  *Rea*, 742 F.3d at 1238 ("[T]he Supreme Court's decision in *Standard Fire* is a relevant change of circumstances . . . justify[ing] a reconsideration of a successive, good faith petition for removal.").  As this Court applied *Lowdermilk* when it remanded this case for the first time, (*see* Remand Order at 6), the requisite "change in circumstances" exists, and the traditional rule against successive removal petitions—even if it applies to CAFA cases—does not require remand here.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' latest Notice of Removal was timely, and Plaintiff's motion to remand is therefore DENIED.

    DATED:    May 18, 2016

                                              CORMAC J. CARNEY

                                      UNITED STATES DISTRICT JUDGE

---

[3] *Lowdermilk* held that when a CAFA plaintiff affirmatively pleads an amount-in-controversy below $5,000,000, a defendant is required to prove "to a legal certainty" that the amount-in-controversy exceeds that figure.  *Lowdermilk*, 479 F.3d at 999.  *Standard Fire* held that when a plaintiff waives damages in excess of $5,000,000 in a CAFA case, the case may still be removable under CAFA because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified," and therefore the plaintiff's waiver "does not bind anyone but himself."  *Standard Fire*, 133 S. Ct. at 1349.  The Ninth Circuit subsequently held that *Lowdermilk*'s holding that a special "legal certainty" standard applies to CAFA cases where a plaintiff affirmatively pleads an amount-in-controversy below $5,000,000 is "clearly irreconcilable with the Supreme Court's reasoning in *Standard Fire*," and that "*Lowdermilk* has been effectively overruled, and . . . the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard."  *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013).